UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES ) <br> ) <br> v. ) <br> ) <br> DEVANTE LOPES, ) <br>         Defendant. ) <br> ) | Docket No. 1:21-cr-10354WGY-7 |

**DEFENDANT DEVANTE LOPES'S MEMORANDUM ON SENTENCING**

Defendant Devante Lopes comes before the Court for sentencing after having pled guilty to Counts 2 and 3 of the third superseding indictment. For the reasons set forth in this memorandum, a 48-month sentence of incarceration and three years of supervised release would be "sufficient, but not greater than necessary" to satisfy the statutory requirements of 18 U.S.C. § 3553(a).

**I.**     **Procedural History**

On April 14, 2022, the first superseding indictment in this case added Mr. Lopes and 17 other defendants to a pre-existing indictment against Mr. Kenny Romero. Mr. Lopes was charged with Count 2, conspiracy to participate in a racketeering enterprise, and Count 3, conspiracy to distribute and possess with intent to distribute marijuana. The following day, April 15, 2022, Mr. Lopes was arrested in his home in Quincy, Massachusetts.

Mr. Lopes was arraigned the day of his arrest, and has been in pre-trial detention since his arrest. Mr. Lopes has been in custody at the Wyatt Detention Facility in Rhode Island, where he has successfully completed multiple programs for personal and career growth.

On December 8, 2022, a second superseding indictment was filed naming an additional defendant, and charging Mr. Lopes with Count 42, possession with intent to distribute 500 grams

1

or more of cocaine. A third superseding indictment, which did not alter Mr. Lopes' charges, was filed on May 15, 2023.

On June 23, 2023, Mr. Lopes filed a Motion to Suppress evidence obtained during the warrantless search of his apartment, statements made during the 20 minutes between his arrest and the reading of his Miranda rights, and evidence obtained during the subsequent warranted search, the application for which was based on information obtained in the first warrantless search. The Government opposed the Motion to Suppress on July 14, 2023. Mr. Lopes did not file a Reply, as the parties entered into a plea agreement.

On May 30, 2024, Mr. Lopes pled guilty to Counts 2 (RICO Conspiracy) and 3 (Conspiracy to Distribute and to Possess with Intent to Distribute Marijuana), and as much of Count 42 as charges possession with intent to distribute cocaine.

Of his 21 co-defendants, eight[1] have been sentenced, six[2] have pled guilty pending sentencing, and two[3] more have requested Rule 11 hearings.

II.     **The Defendant's Personal History**

Mr. Lopes is a 30-year-old man who was born and raised in Dorchester with two brothers. (PSR ¶ 52.) His early homelife was toxic; though his father and mother were married, his father regularly abused alcohol and marijuana and moved in and out of the home, leading to both familial and financial instability. (*Id*.) Mr. Lopes' father was incarcerated when Mr. Lopes was in school, and his mother contemplated moving the family to Cape Verde, which caused stress that caused Mr. Lopes to engage in therapy. (PSR ¶ 59.).

Mr. Lopes graduated from Dedham High School in 2014, where he was a successful

---

[1] Kenny Romero, Keiarri Dyette, Paulo Santos, Michael Lopes, Michael Nguyen, Daronde Bethea, Brendon Amado, and Eric Correia.
[2] Wilter Rodrigues, Charod Taylor, Jamaal Davis, Jose Afonseca, Steve Depina, and Felisberto Lopes.
[3] Jonathan Darosa and James Rodrigues.

basketball player with plans to play at the collegiate level. (PSR ¶ 66). He was accepted to Ithaca University, but was unable to attend due to issues with the dorm. (*Id.*). Instead, he enrolled at Bunker Hill Community College in January 2015. (*Id.*) He also held jobs in retail, benefits, and cleaning from 2014 until 2018, at which time he started assisting his mother with her event planning business and operating his own sneaker selling and trading business. (PSR ¶ 69-72).

Though Mr. Lopes first tried marijuana in high school, he ceased smoking to play sports. (PSR ¶ 63). In 2017, Mr. Lopes was shot in the stomach, back, and finger; the bullet remains lodged in his back, and his injuries continue to cause medical issues. (PSR ¶ 58). Mr. Lopes had to stop playing basketball. He had recently toured Barry University with the hopes of starting over in Florida, which he was unable to do as a result of the shooting and his injuries. (PSR ¶ 66). Following the shooting, he began smoking marijuana again. (PSR ¶ 63). He was prescribed Percocet and believes he may have been addicted; when his prescription could not be filled, he increased his marijuana use. (PSR ¶ 63). His substance use caused problems with his family and ability to work. (PSR ¶ 64). Mr. Lopes has also had symptoms of post-traumatic stress disorder (PTSD) since the shooting. (PSR ¶ 59; Exhibit A, Medical Records Excerpt).

Mr. Lopes' twin daughters were born in 2018. (PSR ¶ 54). Prior to being detained for the instant offense, Mr. Lopes was involved in the daily care of his children, including picking them up from daycare and maintaining a room for them in his home. (PSR ¶ 54). Though Mr. Lopes is no longer in a romantic relationship with his daughters' mother, he has been able to maintain a friendly coparenting relationship with her. (PSR ¶ 54).

Since his arrest for the instant offense, Mr. Lopes has made significant efforts to make up for his past conduct. Other than a single issue involving iPad use, which was resolved, he has been discipline-free since entering the facility. (Exhibit B, Letter from Wyatt Programs

Director). Although he has been in custody, he has been able to take the opportunities afforded to him at Wyatt Detention Center to better himself. He has been employed since being incarcerated, and has received "good" and "excellent" performance evaluations. (PSR ¶ 68; Exhibit B; Exhibit C, Performance Evaluation). He has also volunteered while at Wyatt to assist with cleaning and detailing housing units. (Exhibit D, Letter from Wyatt Chief of Programs). Beyond his work and volunteering duties, Mr. Lopes has continued to better himself through in-person and e-learning courses, on topics including anger management, parenting, communication, and substance abuse. (Exhibit B; Exhibit E, Program Certificates; Exhibit F, Wyatt Transcripts). Significantly, Mr. Lopes has also participated in, and helped with the administration of, the detainee-run restorative justice program called Building on Self-Substance (B.O.S.S.). (Exhibit G, B.O.S.S. materials). B.O.S.S. grew out of a restorative justice program spearheaded by the Honorable Judge Leo T. Sorokin; though the program unfortunately is no longer funded through probation, a number of committed detainees, including Mr. Lopes, have continued the program as a tool to commit to their personal growth. (*Id.*, Exhibit B).

      Mr. Lopes has remained clean while in custody. (Exhibit B). He is interested in continued substance use programming and would benefit from comprehensive treatment through the Bureau of Prisons' Residential Drug Abuse Program (RDAP). (PSR ¶ 63). Following his release, Mr. Lopes' goal is to continue his trajectory of growth by continuing his education and studying for his CDL license, so that he can provide for and be a positive influence on his daughters. (Exhibit G).

      The letters submitted to this Court in support of Mr. Lopes confirm that Mr. Lopes is a man of character, who is remorseful for his actions, and is attentive and committed to his family, particularly his twin daughters. (Exhibit H, Character Letters). Growing up, Mr. Lopes spent

4

summer with his partially disabled grandmother and helped to care for her. (*Id.*, p. 2). He also helped support other children and younger relatives through coaching basketball, working as a summer counselor, and supporting family with extracurricular activities. (*Id.*, pp. 2, 4, 5-6). Mr. Lopes will have the support of his family and community upon his release, and is committed to contributing to his family by providing for and becoming a role model for his daughters.

### III.     Application of the Guidelines & Objections to the Pre-Sentence Report

Mr. Lopes pled pursuant to a plea agreement that eliminated any mandatory minimum sentence. The drug quantity attributed to Mr. Lopes and therefore, his base offense level is not in dispute. Based on a converted drug weight of 202.50 kilograms, his base offense level is 24. *See* U.S.S.G. § 2E1.1, 2D1.1(a)(5) and (c)(8). With a two-level increase for maintenance of a premises for purposes of manufacturing or distributing a controlled substance, and three-level reduction for acceptance of responsibility, Probation calculated Mr. Lopes's adjusted offense level to be 23.[4] (PSR ¶ 37.) Probation calculated Mr. Lopes's criminal history based on a criminal history score of 2 as Category II (*Id.* ¶ 43), which he contests on the grounds that it includes a reckless driving misdemeanor that should be excluded, for reasons discussed in detail below. Using the plea agreement total offense level of 25 and calculating Mr. Lopes' criminal history as Category I—the calculation he made in advance of agreeing to plea—Mr. Lopes' sentencing guidelines range is 57-71 months. Based on Probation's adjusted offense level of 23 and their calculation that his criminal history is in Category II, Probation calculated Mr. Lopes' sentencing guidelines range as 51-63 months. (PSR ¶ 78). Based on Probation's adjusted offense

---

[4] The parties' plea agreement recommended that Mr. Lopes' total offense level be 25, based on the adjustments included above, as well a two-level increase for use of a minor. Probation found that use of a minor did not apply. (PSR Addendum, p. 29) ("Pursuant to §3B1.4, Application Note 1, the defendant must direct, command, encourage, intimate, counsel, train, procure, recruit, or solicit the minor to commit the offense or to assist in avoiding detection of, or apprehension for the offenses. The minor in this case did none of the above. Here, the defendant was simply using his minor brother's name on packages containing drugs.").

5

level of 23 and a criminal history category of I, Mr. Lopes' sentencing guidelines range would be 46-57 months. U.S.S.G. §5A. Mr. Lopes seeks a sentence of 48 months of incarceration, which is reasonable in light of the agreed-upon guideline, probation's recommendation, and equitable considerations described in detail below.

### A. No Criminal History Point Should Apply to Mr. Lopes' Reckless Driving Charge

Probation assigned a criminal history point to his Reckless Operation of a Motor Vehicle charge, which was continued without a finding and ultimately dismissed after six months of probation. (PSR ¶ 41). U.S.S.G.§4A1.2(c)(1) recognizes reckless driving generally as a misdemeanor, and states that reckless driving offenses are not counted where a term of probation is not more than a year. The assignment of a criminal history point to this charge is exclusively because Massachusetts is one of only two states to impose a maximum sentence of more than a year for reckless driving; all other states impose one year or less, in most cases even for repeat offenses.[5] Mr. Lopes' conduct was ultimately considered not serious enough to require any

---

[5] Only Vermont and Massachusetts impose maximum punishments of more than 1 year for first time offenders of reckless driving. Rhode Island permits repeat offenders to be sentenced to more than 1 year of imprisonment for reckless driving, but first offenders are punishable by a maximum of 1 year of imprisonment. Unless otherwise noted, maximum sentences in the following citations refer to the maximum sentence for repeat offenders. *Compare* M.G.L. c 90, § 24(2)(a) (Massachusetts; maximum 2 years imprisonment for first offenders) *and* 23 V.S.A. § 1091 (Vermont; maximum 2 year imprisonment for first offenders) *with* AL Code § 32-5A-190 (Alabama; maximum 6 months imprisonment); AS 28.35.400 (Alaska; maximum 1 year imprisonment); AZ Rev Stat §§ 13-707, 28-693 (Arizona; classifying reckless driving as a misdemeanor, punishable by maximum 6 months imprisonment); AR Code § 27-50-308 (Arkansas; maximum 1 year imprisonment); CA Veh Code § 23103 (California; maximum 90 days imprisonment); CO Code § 42-4-1401 (Colorado; maximum 6 months imprisonment); CT Gen Stat § 14-222 (Connecticut; maximum 1 year imprisonment); 21 DE Code § 4175 (Delaware; maximum 60 days imprisonment); FL Stat § 316.192 (Florida; maximum 6 months imprisonment); GA Code § 40-6-390 (Georgia; maximum 1 year imprisonment); Haw. Rev. Stat. § 291-2 (Hawaii; maximum 30 days imprisonment); ID Code § 49-1401 (Idaho; maximum 1 year imprisonment); 625 ILCS 5/11-500, 730 ILCS 5/5-4.5-55 (Illinois; classifying reckless driving as a misdemeanor, punishable by maximum less than 1 year); IN Code §§ 9-21-8-52, 35-50-3-4 (Indiana; classifying reckless driving as a misdemeanor, punishable by maximum 60 days imprisonment); IA Code §§ 321.277, 903.1 (Iowa; classifying reckless driving as a misdemeanor, punishable by maximum 30 days imprisonment); KS Stat § 8-1566 (Kansas; maximum 6 months imprisonment); KY Rev Stat §§ 189.290, 189.990 (Kentucky; maximum $100 fine); LA Rev Stat § 14:99 (Louisiana; maximum 6 months imprisonment); 29-A ME Rev Stat § 2413, 17-A ME Rev Stat § 1604 (Maine; classifying reckless driving as a Class E crime, punishable by maximum 6 months imprisonment); MD. Transportation Code § 21-901.1 (Maryland; maximum $1000 fine); MI Comp L § 257.626 (Michigan; maximum 93 days imprisonment); MN Stat §§ 169.13, 609.02 (Minnesota; classifying reckless driving

imprisonment, nor serious enough to require probation more than a year. A defendant who committed multiple more serious reckless driving infractions that led to actual imprisonment in nearly any other jurisdiction would not have any criminal history point applied. *E.g.*, *United States v. Pinkham*, 896 F.3d 133, 139–40 (1st Cir. 2018) (level of culpability should be considered in determining whether criminal history point should apply to misdemeanor conduct).

Further, the Sentencing Commission's definition of a "felony offense" for criminal history calculation purposes is substantially similar to the definition of being a felon in possession of a firearm, but Congress has expressly excluded offenses like Mr. Lopes' from the statutory scheme. U.S.S.G. §4A1.2(o) defines a "felony offense" as "any federal, state, or local offense punishable by death or a term of imprisonment exceeding one year." In the parallel situation of determining what constitutes a "crime punishable by imprisonment for a term

---

as a misdemeanor, punishable by maximum 90 days imprisonment); MS Code § 63-3-1201 (Mississippi; maximum 10 days imprisonment); MO Rev Stat §§ 304.012, 558.011 (Missouri; classifying reckless driving as a misdemeanor, punishable by maximum 6 months imprisonment); MT Code §§ 61-8-301; 61-8-715 (Montana; maximum 6 months imprisonment); NE Code §§ 28-106, 60-6,213-219 (Nebraska; maximum 1 year imprisonment); NV Rev Stat § 484B.653   (Nevada; maximum 6 months imprisonment); N H Rev Stat § 265:79 (New Hampshire; maximum $1000 fine); NJ Rev Stat § 39:4-96 (New Jersey; maximum 3 months imprisonment); NM Stat § 66-8-113 (New Mexico; maximum 6 months imprisonment); NY Veh & Traf L § 1212; NY Penal L § 70.15    (New York; classifying reckless driving as a misdemeanor, punishable by maximum 364 days imprisonment); NC Gen Stat §§ 15A-1340.23, 20-140,   (North Carolina, classifying reckless driving as a misdemeanor, punishable by maximum 60 days imprisonment); ND Century Code §§ 12.1-32-01, 39-08-03 (North Dakota; classifying reckless driving as a misdemeanor, punishable by maximum 30 days imprisonment); OH Rev Code §§§ 2929.24, 2935.26, 4511.20 (Ohio; classifying reckless driving as a minor misdemeanor, punishable by maximum 60 days imprisonment (first time offense not punishable by imprisonment)); 47 OK Stat § 11-901 (Oklahoma; maximum 6 months imprisonment); OR Rev Stat §§ 161.615, 811.140 (Oregon; classifying reckless driving as a misdemeanor, punishable by maximum 364 days); 75 PA Cons Stat § 3736 (Pennsylvania; maximum $200 sentence); RI Gen L §§ 11-1-2, 31-27-4 (Rhode Island; maximum 1 year imprisonment for first time offenders); SC Code § 56-5-2920 (South Carolina; maximum 30 days imprisonment); SD Codified L §§ 22-6-2, 32-24-1 (South Dakota; classifying reckless driving as a misdemeanor, punishable by maximum 1 year imprisonment); TN Code §§ 40-39-306, 55-10-205 (Tennessee; classifying reckless driving as a misdemeanor, punishable by maximum 6 months imprisonment); TX Transp Code § 545.401 (Texas; maximum 30 days imprisonment); UT Code §§ 41-6a-528, 76-3-204 (Utah; classifying reckless driving as a misdemeanor, punishable by maximum 6 months imprisonment); VA Code §§ 18.2-11, 46.2-852, 46.2-868,   (Virginia; classifying reckless driving as misdemeanor, punishable by maximum 1 year imprisonment); WA Rev Code § 46.61.500 (Washington; maximum 364 days imprisonment); DC Code § 50–2201.04 (Washington DC; maximum 1 year imprisonment); WV Code § 17C-5-3   (West Virginia; maximum 6 months imprisonment); WI Stat § 346.61-62 (Wisconsin; maximum 1 year imprisonment); WY Stat § 31-5-229 (Wyoming; maximum 6 months imprisonment).

7

exceeding one year" for the criminalization of being a felon in possession of firearms, Congress statutorily recognized state law differences and excluded "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20). Reckless driving in Massachusetts is classified as a misdemeanor, and punishable by only two years. *See Commonwealth v. Carlson*, 447 Mass. 79, 85 (2006) (violation of M.G.L. c. 90, § 24(2)(a), driving to endanger, is misdemeanor). Mr. Lopes' offense has therefore been excluded by Congress from the category of crimes punishable by imprisonment exceeding one year in the context of a felon in possession; that category, from which Mr. Lopes would be excluded for statutory purposes, is analogous to the definition of "felony offense" under the Sentencing Guidelines. Deference should be given to Congress' exclusion of Mr. Lopes' offense from the definition of felony offenses and/or crimes punishable by a term of imprisonment of more than one year. *E.g., Dorsey v. United States*, 567 U.S. 260, 266 (2012) (statutes trump Guidelines); *Silva v. Garland*, 27 F.4th 95, 101 (1st Cir. 2022) (drawing general federal definition from definitions and consensus in related statutes), *cert. denied*, 143 S. Ct. 2689 (2023). The sentencing court has authority to disagree with the Guidelines and consider the near-universal exclusion of Mr. Lopes' reckless driving conduct from felony offense-type categories. *E.g., Kimbrough v. United States*, 552 U.S. 85, 109-110 (2007) ("a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply" (citation omitted)); *Spears v. United States*, 555 U.S. 261, 264 (2009) (sentencing court may depart from guidelines based on policy or categorical disagreement rather than individualized determination); *United States v. Boardman*,

8

528 F.3d 86, 87 (1st Cir. 2008) (district judge may deviate downwards from guidelines based on categorical disagreement).

Where the Sentencing Commission expressly carved out reckless driving conduct from application of criminal history points, Mr. Lopes would have no criminal history point applied had the charge arisen from nearly any other state, and Congress has excluded Mr. Lopes' conduct from statutory definitions of felony offenses, principles of equity and construction of the Guidelines dictate that no point should apply. *E.g., Pinkham*, supra at 139-40.

Without a point applied to this reckless driving charge, Mr. Lopes' criminal history score would be one, and his criminal history would be in Category I. (PSR ¶¶ 40-42). *See* U.S.S.G. §5A.

### B. If this Court Determines that Mr. Lopes Reckless Driving Charge Counts Toward his Criminal History, the Court should Grant a Downward Departure

Categorizing Mr. Lopes' criminal history as Category II, based on the inclusion of his Reckless Driving history, substantially over-represents the seriousness of Mr. Lopes' criminal history and the likelihood he will commit other crimes, and warrants a downward departure under U.S.S.G. §4A1.3(b). A downward departure based on criminal history, unlike other downward departures, do not require any finding of aggravating or mitigating circumstances. As one judge of this Court has noted, "§4A1.3 departures are 'encouraged departures' under *Koon v. United States,* 518 U.S. 81, (1996)." *United States v. Wilkerson*, 183 F. Supp. 2d 373, 380 (D. Mass. 2002).

The Sentencing Commission has expressly carved out reckless driving conduct from the application of criminal history points, and has therefore determined that the conduct leading to Mr. Lopes' categorization in Category II does not contribute to the seriousness of his criminal history or likelihood of recidivism. By the Sentencing Commission's own determination, a

9

§4A1.3 should apply here to ensure that conduct the Sentencing Commission excluded from counting is not counted towards Mr. Lopes' criminal history.

Courts have engaged in downward departures particularly where a defendant's criminal history does not involve multiple instances of violence. *See United States v. Woodley*, 344 F. Supp. 2d 274, 281 (D. Mass. 2004), citing *United States v. Gendraw*, 337 F.3d 70, 72 (1st Cir.2003) (declining downward departure for numerous convictions for assault and battery) and *United States v. Mayes,* 332 F.3d 34, 37–38 (1st Cir.2003) (declining downward departure for career offender engaging in armed assault)*; United States v. Wilkerson*, 183 F. Supp. 2d 373, 381 (D. Mass. 2002) (noting no convictions for crimes of violence in applying downward departure). Mr. Lopes is not charged here with any violent conduct. Departing downward to Criminal History Category I for Mr. Lopes would appropriately reflect his single prior conviction for assault and battery, without inappropriately using his Reckless Driving offense to place him on par with career offenders and multiple violent offenders.

Judges of this Court "have departed downward to eliminate disparities as among codefendants." *United States v. Lacy*, 99 F. Supp. 2d 108, 123 (D. Mass. 2000), *aff'd sub nom. United States v. Dedrick*, 16 F. App'x 10 (1st Cir. 2001). Placing Mr. Lopes in Category II inappropriately places him in the same criminal history category as Michael Lopes, who has three prior drug convictions for marijuana, heroin, cocaine, and fentanyl, and who this Court referred to as "poisoning [his] community." (D. 829, 18). Mr. (D.) Lopes's single Reckless Driving offense is not comparable to this history of drug distribution.

The Application Notes and Background to §4A1.3 further support a downward departure. As stated therein, "the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur," and allows for criminal defendants with "an

10

extensive record of serious, assaultive conduct" to be placed in the same category as defendants with less serious conduct, such as Mr. Lopes.

If this Court determines that Mr. Lopes' Reckless Driving offense merits a criminal history point, the Court should apply a downward departure based on U.S.S.G. §4A1.3 and place Mr. Lopes in Criminal History Category I, which more accurately represents his criminal history and likelihood of recidivism.

## IV. Sentencing Considerations

As the Court knows, it may impose a sentence below the guideline range, and indeed must do so to the extent that doing so will result in a sentence that is "sufficient, but not greater than necessary," to satisfy the statutory requirements of 18 U.S.C. § 3553(a)(2). *See* § 3553(a) ("The court *shall* impose [such a sentence]" (emphasis added)); *United States v. Prosperi*, 686 F.3d 32, 42-43 (1st Cir. 2012) (finding sentence of six months of home confinement, three years of probation, and 1,000 hours of community service substantively reasonable where guidelines range was 87-108 months and discussing the "very broad" discretion afforded sentencing courts and the deference accorded their sentencing decisions (citations omitted)). As supported by a review of the factors below, a sentence of 48 months incarceration and three years of supervised release, is fully sufficient to meet the objectives set forth in 18 U.S.C. § 3553(a).

*Nature and Circumstances of Offense*

Mr. Lopes deeply regrets his decision to engage in the drug transactions at issue here. He fully recognizes that his criminal acts caused significant harm to his family. He also recognizes that his misguided involvement in drug dealing seriously harmed the community, particularly people who are vulnerable to addiction and their loved ones. He took responsibility for his conduct by promptly pleading guilty to the charge against him and will further address the court

11

at sentencing to express his remorse.

*Age, History and Circumstances of Defendant*

Mr. Lopes's age, history and background justifies a below-guideline sentence of 48 months of incarceration and a three-year term of supervised release. This sentence of incarceration would sufficiently punish Mr. Lopes, while also enabling him to eventually return to his family and his community and get on a path where he can recover his substance use and provide for himself in a law-abiding manner.

As Probation noted, Mr. Lopes' youthfulness at the time of the offense (ages 25-27), including his environment, adverse childhood experiences, substance use, and familial relationships may be considered in a downward departure. (PSR ¶ 94). *See* U.S.S.G. §5H1.1. Mr. Lopes was subjected to significant family instability and violence in his youth, including being the victim of gun violence, which led to his substance abuse to manage the physical pain and PTSD symptoms. (PSR ¶¶ 52, 58, 59, 63). Despite the poor choices he has made in the past, Mr. Lopes has worked hard while he has been in custody and has started to obtain the skills and education that will enable him to lead a better life when he is eventually released from prison. (Exhibits E-H). He fully admitted responsibility for the conduct at issue in the indictment and has served thus far in detention with no issues. (Exhibit B). Mr. Lopes recognizes that his substance does not excuse his conduct, but believes that his recognition of it and commitment to further counseling and treatment should be considered by the Court in crafting a just sentence.

*Reflecting the Seriousness of the Offense, Respect for Law, Providing Just Punishment, Affording Adequate Deterrence, and Protecting the Public from Further Crimes*

Mr. Lopes fully recognizes that he engaged in serious offenses involving drugs and criminal activity that harmed the public. A sentence of 48 months of incarceration and three years of supervised release would reflect the seriousness of the offense and Mr. Lopes's

participation in it. Should such a sentence be imposed, Mr. Lopes would be incarcerated during his early thirties, which would provide just punishment for Mr. Lopes, deter any further criminal activity, and protect the public from any further criminal activity. Although he has been in custody since his arrest, Mr. Lopes has already made significant strides to change himself for the better to avoid future criminal activity. He has taken the opportunities afforded to him at Wyatt to be gainfully employed, learn new skills, and train others. He has also engaged in substance abuse classes and will seek out more options for treatment once he is in a BOP facility. Given Mr. Lopes's growth and development in the more than two years he has been in pretrial detention, a sentence of 48 months will provide just punishment and adequate deterrence for his offense. Of note, research has consistently shown that certainty of punishment has deterrent effects, but increased severity does not have increased deterrent effects, particularly in the range applicable to Mr. Lopes (below 5 years). Daniel P. Mears, et. al, *Recidivism And Time Served In Prison*, 106 Journal of Criminal Law and Criminology 83, 119 (2016) ("no appreciable effect" on recidivism for sentences between 24 and 60 months, and only "highly uncertain" decrease in recidivism following terms of 6 years or more); Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-448 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006) (National Academy of Science panels and evidence surveys consistently determine that "increases in severity of punishments do not yield significant (if any) marginal deterrent effects").

*Equity with Sentencing of Co-Defendants*

Eight of Mr. Lopes' co-defendants have thus far been sentenced in this case. While Mr.

Lopes is not aware of whether they were found responsible for all overt acts alleged against them in the indictment, it is still informative to the court to be aware of sentencing equity considerations.

| Kenny Romero | **63 months.** Counts 1, 2, 15, 20, 21, 23, and 28 (consecutive to SR violation of 24 months on 19-cr-10330-WFY) <br> Ct 1: possession with intent to distribute cocaine <br> Ct 2 overt acts: <br>     o: distribution of marijuana <br>     p: distribution of cocaine base <br>     r: possession of cocaine <br>     s: distribution of cocaine <br> Ct 15: distribution of and possession with intent to distribute cocaine base <br> Ct 20: distribution of and possession with intent to distribute cocaine <br> Ct 21: felon in possession of a firearm and ammunition <br> Ct 23: felon in possession of a firearm <br> Ct 28: felon in possession of a firearm <br> CHC: Category III (D. 746, 1) |
|---|---|
| Keiarri Dyette | **42 months.** Counts 2, 9, and 16. <br> Ct 2 overt acts: <br>     m: distribution of marijuana <br>     n: attempted murder <br> Ct 9: dealing in firearms without a license <br> Ct 16: conspiracy to distribute and to possess with intent to distribute cocaine base <br> CHC: Category I (D. 775, 1) |
| Paulo Santos | **120 months.** Counts 2, 4, 5, and 6. <br> Ct 2 overt acts: <br>     f: unarmed robbery <br>     h: possession over 500g cocaine, marijuana, a firearm, ammunition <br> Ct 4: possession with intent to distribute more than 500g but less than 2kg of cocaine <br> Ct 5: felon in possession of a firearm and ammunition <br> Ct 6: possession of a firearm in furtherance of a drug trafficking offense <br> CHC: Category VI (D. 711, 1) |

14

| Michael Lopes | **57 months.** Superseding information charging conspiracy to distribute and possess with intent to distribute cocaine, cocaine base, and methamphetamine<br>CHC: Category II (D. 724, 1) |
|---|---|
| Michael Nguyen | **70 months.** Counts 2 and 40.<br>Ct 2 overt acts:<br>    aa: armed robbery and home invasion<br>Ct 40: conspiracy to interfere with commerce by threats or violence<br>CHC: Category I (D. 677, 1) |
| Daronde Bethea | **250 months.** Counts 2, 40 and 41.<br>Ct 2 overt acts:<br>    c: armed robbery and home invasion<br>    z: attempted murder<br>    aa: armed robbery and home invasion<br>Ct 40: conspiracy to interfere with commerce by threats or violence<br>Ct 41: felon in possession of a firearm and ammunition<br>CHC: Category V (D. 783, 1) |
| Brendon Amado | **70 months.** Count 40. Conspiracy to interfere with commerce by threats or violence.<br>CHC: Category IV (D. 916, 3) |
| Eric Correia | **180 months**. Counts 2 and 37.<br>Ct 2 overt acts:<br>    a: carjacking<br>    b: attempted murder<br>    d: armed robbery<br>    e: armed robbery<br>    y: distribution of marijuana<br>    bb: attempted murder<br>Ct 37: distribution of marijuana<br>CHC: Category II (D. 947, 8-9; 948, 9). |

Notably, other than Kenny Romero, who faced significantly more charges with a higher Criminal History Category, and Michael Lopes, discussed below, Mr. (D.) Lopes is the only defendant to be sentenced thus far who is not alleged to have engaged in any violent actions.[6] If

---

[6] With respect to Count 2, Mr. Lopes is charged with the overt act of acquiring marijuana from out of state for distribution in Massachusetts. (D. 403, 12).

this Court determines that Mr. Lopes' criminal history is Category I, then Mr. Lopes will be similarly situated in terms of his criminal history with Mr. Keiarri Dyette. In addition to being charged with distribution of marijuana as an overt act and distribution of cocaine as a separate count (similar to the charges against Mr. Lopes), Mr. Dyette engaged in violence—specifically, pistol-whipping a gang rival—that is not alleged against Mr. Lopes. (D. 669, 1; 775, 2; 869, 19). Despite this violent history, Mr. Dyette was sentenced to 42 months. Mr. Lopes requests a sentence of 48 months, which is equitable given the lower sentencing of a co-defendant charged with violent conduct.

Michael Lopes' sentencing is also instructive. Similar to Mr. (D.) Lopes, Michael Lopes did not engage in any violent acts, and though this Court concluded his total offense level was 27, the parties calculated a total offense level of 23 by treating all the cocaine base as powdered cocaine. (D. 829, 5-7; D. 629, 2). Similar to Mr. (D.) Lopes, law enforcement officers discovered cocaine in Michael Lopes' home. (D. 829, 9). Officers also discovered methamphetamine in Michael Lopes' home. (*Id*.). Unlike Mr. (D.) Lopes, Michael Lopes has a history of prior three prior drug convictions involving fentanyl, heroin, cocaine, and marijuana. (*Id*. at 9-10). Even if this Court were to determine that Mr. (D.) Lopes' criminal history puts him in Category II, his prior history of reckless driving is significantly different for sentencing considerations than the pattern of drug offenses underlying Michael Lopes' 57-month sentence.

*Equity with Defendants with Similar Records Found Guilty of Similar Conduct*

As the Court is aware, § 3553 directs it to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As discussed above, this Court should determine that Mr. Lopes's criminal history is in Category I, with a Final Offense Level of 23 (as calculated by Probation). The

Judicial Sentencing Information System (JSIN) indicates that of the defendants with a criminal history category of I and Final Offense Level of 23 who have pled to Powder cocaine offenses, the average sentence imposed was 33 months, and the median sentence imposed was 34 months.[7]

As noted in the Pre-Sentence Report, if this Court determines Mr. Lopes's criminal history is in Category II with a Final Offense Level of 23, then for similarly situated defendants pleading to powder cocaine offenses, the average sentence imposed was 49 months, and the median sentence imposed was 60 months.

Mr. Lopes requests a sentence of 48 months, which is well above the average and median sentences imposed for defendants with Category I criminal history and a Final Offense Level of 23, and just one month below the average sentence imposed for defendants with Category II criminal history and a Final Offense Level of 23. Thus, Mr. Lopes's recommended sentence aligns with the statutory goals of ensuring unwarranted inequities in sentencing.

## V. Conclusion

For all the reasons set forth above, Mr. Lopes asks that this Court sentence him to 48 months incarceration and a three-year term of supervised release, and that the Court waive any fines due to his lack of ability to pay. Mr. Lopes also requests that the Court recommend RDAP given his documented history of drug addiction. Such a sentence will be sufficient but not more than is necessary to achieve the goals of our federal sentencing system.

---

[7] Of defendants with Category I and a total offense level of 25—the total offense level referenced in the parties' plea agreement—who have pled to powder cocaine offenses, the average sentence imposed was 47 months and the median sentence imposed was 50 months. Mr. Lopes' requested sentence of 48 months is still aligned with the average sentence applied to defendants in the guideline range to which Mr. Lopes pled.

Respectfully submitted,

/s/ Monica R. Shah
Monica R. Shah (664745)
Jennifer M. Herrmann (708231)
Zalkind Duncan & Bernstein LLP
65A Atlantic Avenue
Boston, MA 02110
(617) 742-6020
mshah@zalkindlaw.com

Dated: January 23, 2025

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served on this date upon the attorney of record for each party by electronic filing.

/s/ Monica R. Shah
Monica R. Shah
